Good morning everyone. Our first case for argument today is Culp v. Madigan, number 17-2998. We'll first hear from counsel for plaintiffs. Good morning, Your Honor. May it please the Court. In Moore v. Madigan, this Court wrote that so substantial a curtailment of the right of armed self-defense requires a greater showing of justification than merely that the public might benefit on balance from such a curtailment, though there is no proof it would. The District Court, in this case, originally noted the problem with the State's arguments, which is the reason why this Court should overturn that Court's ruling now. Could you state your name for the record, counsel, please? Oh, I'm sorry. David Siegel, S-I-G-A-L-E. In 2015, the District Court held, while defendants have pointed to evidence tending to show an important and strong governmental interest, it is possible that defendants' evidence will not ultimately show that the regulations will, in actuality, alleviate the problem identified, preventing unqualified individuals from carrying loaded firearms. It has been almost two years since this Court's decision in Culp One, and not only has there still not been a substantially similar survey sent out since 2015, but there has still been no submitted evidence of any harm from an erroneously granted concealed carry license anywhere, and certainly no evidence of harm from an erroneously accepted concealed carry license application. With that in mind, the District Court erred in denying plaintiffs' summary judgment in this case, while granting it to the defendants. The District Court, constrained to apply the intermediate scrutiny implied by this Court in Culp One, ruled the challenge law was substantially related to the State's interest. And while plaintiffs will not quarrel with the State interest of preventing gun violence, as plaintiffs want the same thing, there is still zero evidence that Section 66-40B of the Firearm Concealed Carry Act is implemented to prohibit the law-abiding adults in 45 states from submitting an application for a concealed carry license in Illinois bears any relation to preventing gun violence at all. You say we agree with you strictly to the application, is that correct? I'm sorry, Your Honor? Is the application... That is all the plaintiffs have been asking for in this case, is the right to submit an application and prove themselves. Contrary... Contrary, yes. ...accompanied by appropriate verifications supply the information that Illinois is looking for, for the license. And suppose a license is then conferred, what do you do about the monitoring interest that the State is advancing? Well, the State can do numerous things. The State can ask for, as an example, they can ask for annual mental health certifications, like they do under Section 65-8U of the FOID Act, where they require... They can, they can, they certainly could. But with respect to Illinois residents, the monitoring is much more regular, much more active, much more intense. And so is it your position that the weight of the Second Amendment interest that your clients are advancing would require that monitoring interest that the State has to give way and permit monitoring on a one-year basis, for example? Well, Your Honor, in this case I would argue yes, because the State has not shown at all that any harm would result from giving way. There has been no evidence of... I think they've made, haven't they made the point they revoke licenses with some regularity with respect to in-State residents? When an individual, for example, is convicted of a domestic battery or committed to mental health treatment, the license is revoked. Those people get... But those people would get reported in the federal system, and the State would pick that up. There's no... The State says that they check the federal databases quarterly. There's no requirement that they check it quarterly. I'm not sure why they check it quarterly. They could check it as often as they wanted to, presumably, if they had that concern. Mr. Siegel, do you think that the State officials are misinterpreting State law in the way they're applying the concealed carry law? I'm sorry, Your Honor? Do you think that the State officials are misapplying State law? I believe as written that the Concealed Carry Act requires the State to check all available databases. The State seems to be letting the perfect be the enemy of the good and saying, well, we can't find everything, so we're just going to deny everyone the ability to try. Do you think that's contrary to State law? I think the State's interpretation of that is contrary to the way the State law is written. If that's so, then why should we not suggest that Pullman abstention should apply, and you ought to resolve those issues under State law before we bring in federal constitutional artillery? Because this is... Well, for starters, that issue has never been raised or considered until... I'm raising it because you make the argument that State officials are misapplying State law, and federal courts are usually not eager to reach constitutional decisions that don't have to be made. Well, Your Honor, I believe in this case that the constitutional considerations here far outweigh... I believe even if the State were properly applying, and they say they are, but even if they were, I believe that the unconstitutionality of the statute still far outweighs any of that consideration. Well, but if you think that State law allows a good enough search of databases, that the perfect should not become the enemy of the good enough, why not let Illinois make that decision before we decide where the constitutional line is? Because there have, for starters, there have been numerous Illinois cases raising various challenges to the application of the Concealed Carry Act, and they have all been upheld to my knowledge. By the Illinois Supreme Court? I can't say that. The Illinois Supreme Court, I believe, weighed in the... And specifically have these addressed the non-resident licensing issue, where you're saying State officials are misapplying State law? I think that I don't believe the Illinois Supreme Court has specifically addressed that question. I don't believe that it has been raised in a State court, but I also believe that it is a minor issue compared to the constitutionality issue that has been raised in this case since its inception. Well, as you probably know, I earlier, last time, raised the issue of the constitutional problem that I have, and here we are looking at an application. So someone from another State who happens to have a concealed carry license, or whatever they call it, they are not allowed to apply. And that, at least, and I look at it, it's not so much the State law, it's the way that the constitution, they have a right to keep and bear arms. There are people in State that, whatever they have, State law or whatever, they are able to carry and get a concealed carry, which people coming from 45 other States are not. I agree. That's my concern, and I expressed that in my dissent the last time. And I still see the problem, and I think what happened here is the level of scrutiny. And I don't know what your position is on the level of scrutiny, but I'd like to hear a little bit about that, about what, under the Second Amendment, the level of scrutiny should be in determining whether or not someone has the opportunity to get a concealed carry in Illinois. Well, Your Honor, I have two points regarding that. And the first is that, with respect, this Court, in its Culp One opinion, did not, except for Your Honor and your dissent, did not analyze or really even state what the level of scrutiny it was applying. It implied it was applying intermediate scrutiny, but never came out and said it was, and never said why it was doing so. And I agree with Your Honor where you pointed out that a law regarding the Second Amendment, the fundamental constitutional right, has to require at least a stronger showing. The close fit between that and a substantial government interest and higher than intermediate scrutiny. I agree with Your Honor for that. And I also assert that... Sorry. What do you think is higher than intermediate scrutiny that applies here? Well, I would at least argue the not quite strict scrutiny of EZAL. Okay. Well, that was the phrasing they used. Intermediate plus. Something slightly less than strict scrutiny. Yeah. I mean, that's what the Court stated in EZAL. And... How relevant or not relevant is it, in your judgment, that Illinois affords non-residents some rights of firearm possession? You know the rights I'm referring to. The rights to have a firearm in your car, to access a range, to engage in authorized hunting. And I think as well, to keep a firearm in a home during a temporary stay. Is that relevant or not relevant? I think that completely undercuts the state's argument regarding their claim justification. Why? Because they trust these people to come into the state all the time with firearms in all these various circumstances and still say you're not trustworthy enough to submit an application. And, Your Honor, in the briefs, I cited that this is not... I don't think they'd argue it. I mean, we'll see in a few minutes. But I don't know that they'd argue it in terms of trust. Wouldn't they argue it in terms of the degree of curtailment or the limitation on the Second Amendment right when you consider the kind of basket of possession rights that non-residents have is actually quite minimal. The limitation is only that on concealed carry. Is that a proper way to approach the question in your view or not? I don't believe so. I mean, even Illinois residents without a concealed carry license are not allowed to have a functional firearm in their car. But non-residents with a concealed carry license in their home state are. And this is not theoretical. I cited numerous examples in the briefs of people who would probably be dead right now if not for the fact that they were able to access a concealed firearm. Some of them were concealed firearm holders and would be robbery victims on a city street or in a parking lot. Some of them, the only reason they're alive is because one of them happened to be in their car at the time. He was from St. Louis, happened to be in the car. And when someone pulled up to carjack him, he was able to get his firearm. And the other one, the woman, the only reason she's alive is because her carjacker slash kidnapper forced her back into the car. So she was able to get her firearm. I mean, this is, I don't mean to sound all spouting hyperbole, but I mean, this is life and death. And the state talks in hypotheticals and imaginations and speculations of what could happen. Is there any evidence that other states have issued concealed carry licenses to people who can't responsibly or shouldn't responsibly have them? If there is, I can't say never. Because there's hundreds of thousands of concealed carry permits. So I'm not going to be so foolish as to say it's never. So one or two anecdotes on either side don't tell as much, do they? Well, I think that if that's the measure, I think there's far more anecdotes on our side than anything from the state side. Can I ask you just to follow up on that? Of course. If we think that some of this may need to go back to the district court, this has to do with what do we send it back for? There's considerable debate in the parties' briefs and the amicus briefs about social science data on crime rates in different states, depending on their concealed carry laws and the like. Was any of that first presented to the district court? And was any of it exposed to cross-examination in the district court? Well, Your Honor, before I answer that, I would note that I'm into my bullet time. I'm going to extend both sides' time by five minutes in this case. We had one case cancel, and this seems like a good use of the extra time. I appreciate that, Your Honor. There were studies, the conclusions of which were cited to the court and which were cited in the briefs. They were not subject to cross-examination. Shouldn't they be if we're going to be doing constitutional adjudication on the basis of this data? Your Honor, when the case, when Culp One came back to the district court and a summary judgment order was immediately entered, a briefing schedule, I did ask for time to submit experts and discovery because the schedule was very short in the beginning, and even while that discovery period was ongoing, I filed for the preliminary injunction that became the subject of Culp One. Now, to be fair, when I say the discovery period was open, it was the period that depositions would still have been taken and there weren't any witnesses, but technically discovery was still open at the time. I asked for that time when the case got remanded. I referenced it to the district court when we argued the summary judgment. I did not make an issue of it in the briefing here because I'm aware that that is a matter of wide discretion to the district court, but I do agree with you. I think that in Moore v. Madigan, the court looked at all the social science and ultimately said it was inconclusive on either side. None of it that had been, that was decided in the district court on the 12B6 motion. Moore was, yes. And this court remanded for entry of judgment for plaintiffs without a trial. So you may recall that my dissent from the denial of rehearing in Moore suggested a little evidence might actually be helpful in dealing with these issues. I'm not opposed to that. I believed that the evidence would support the plaintiffs in this case, and I did ask for that time, but it was not to be. Has the Supreme Court extended Second Amendment rights for individuals outside the home? The Supreme Court has implied in that it said that the Second Amendment right protects the right to arm oneselves in case of confrontation. It's most acute inside the home, but clearly that must be the case. Miller and McDonald both dealt with possession of firearms in the home, correct? The fact pattern of both cases involved in the home, yes. But the court specifically did not limit its holding to in the home. And in Moore, did we say that core Second Amendment rights include public carry or only that a complete ban on public carry in Illinois was unconstitutional? In Moore, the court did not use the word core as such, but it did say that the Second Amendment right of self-defense is as important outside the home as inside the home. And went to a pretty colorful example about the woman in her penthouse apartment on Michigan Avenue with the gun under her pillow versus the person walking the street in a bad neighborhood at night, and somehow the Second Amendment protects the former and not the latter, and that simply was wrong. So yes, even though the court did not say the words outside the home is part of the core right when it said it is just as important outside the home as inside the home, I'm not sure what else that could have meant. I'll give you a hypothetical. Suppose that in February an individual in a neighboring state, not one of the five, is arrested for domestic battery and committed to mental health treatment. How is Illinois to learn of that? That has a CCL, I'm sorry. I believe such an individual would be placed in the federal database as banned under Section 922G9 of the Gun Control Act. And what evidence did you offer in the district court on points like that? Because what you just said I think is very much at odds with the state's position and with the train declaration. They don't have near the confidence in that database that you do. I don't believe that the opposite assertion as such was raised such that there would have been anything. See, that's the part of this that's hard, because I think for an Illinois resident, a light would go off in the Illinois State Police Office in pretty real time, notifying the police of those facts, which, as I read the statute, could lead to a revocation. They have no assurance that that information would make its way to the Illinois State Police in anywhere close to that time, if at all. I guess that comes down to two related points. One, you said, and one is sort of a tangent, the first is which the state says that it checks the NICS databases quarterly but says no information about why it only must check quarterly as opposed to far more frequently. And the other, you know, and it ties in with the state saying, oh, well, we don't have the money, and doesn't explain, well, doesn't explain what the money it's charging, double for non-residents, what's that money for? It doesn't explain why if it needs $80 to get some records from Mississippi, which, by the way, is on the approved list, why it can't say to the applicant, go get those records. It's going to cost $80, you go get them. Yeah, I hear a lot of your points as going to the initial application and the initial verification. I think that's the easy part of it. It's the monitoring that I don't know how, I don't know what Illinois is supposed to do. Well, Ms. Trame said that in the deposition that I attached to the record that there are exactly the same gaps in mental health record access for Illinois residents as non-Illinois residents. That's part of the record. And there's still nothing said to this big whole. I am so far over. I apologize, Your Honor. I'll finish this answer. The fact is that someone from Illinois leaves the state, goes across the river to St. Louis and comes back, who knows what they've been doing. The state doesn't, but the state doesn't revoke people's licenses for that. Again, perfect being the enemy of the good here, the state can do much, much more to monitor and to vet initial applications. They've just chosen not to. So what do you think the Second Amendment allows the state to do with respect to non-resident concealed carry licenses? Well, if the fundamental right is the right to public carry for the right of self-defense, then at a bare minimum, and it's not without regulation. To assure that people are law-abiding, qualified, and mentally healthy. Well, all the people that want to apply have to have a concealed carry permit in their own state. They have to undergo all the Illinois requirements of all the training requirements, pay the fees, submit to all the paperwork. So what can Illinois do, to follow up on Judge Scudder's questions, what can Illinois do to insist on monitoring on a current basis, continuing compliance with those criteria? They can insist on regular mental health certifications. They can demand regular criminal background reports. They can check the NICS databases more frequently, and any other databases that they have, they can check those more frequently. There is much more that can be done than just saying, sorry, we can't allow anyone to do it. Your Honor, with that, I'm done. You'll have a couple minutes of rebuttal. Thank you, Your Honor. Thank you very much, Mr. Siegel. Ms. Hunger, for the State. Could you set that at 25? Okay, thanks. Go ahead. May it please the Court, Assistant Attorney General Sarah Hunger, on behalf of the State Defendants. I'd like to start where this Court left off with Mr. Siegel, because I do think that it addresses the crux of the case. Here, as already decided in Culp 1, Illinois has a substantial State interest in the verification and the monitoring of all of its applicants for a concealed carry license, both in State and out of State. The State has come forward with a sworn affidavit by Jessica Tremme, who's the Bureau Chief of that particular division, and plaintiffs have simply offered no evidence controverting those facts. They sit here and say that, oh, sure, Illinois can go and get those records. We know that there's a better way. But Illinois has presented sworn evidence stating that that's not possible, and they have not come back with any testimony or any contrary evidence. And that is especially poignant here, because this Court has already reached the conclusion that Illinois has a substantial State interest in Culp 1. As Jessica Tremme explained in her affidavit, Illinois can obtain all of the information that it needs about its own residents through its comprehensive system of State databases, as well as the Federal databases. But with respect to non-residents, it's simply not possible for them to do so because they're not in Illinois's systems. Well, who would do it? Who would? The problem I have here is strictly the application. You can't apply. You could apply and put all sorts of conditions, and the same conditions that Illinois applies to their various people would have a concealed carry. It may be very difficult for someone else. No, I'm not sure what the reasons were for Illinois permitting four States and then cutting that back to one and adding three more. I don't know what those States had unique and what the other ones didn't have. I didn't dig into that. But there must be some reason why at least four States do have an easier – well, they can apply, basically. But those States must do certain things that are okay with Illinois. Yes, that's correct. And then why can't other States, as they require through the applicant, to have to follow those same rules? Yeah, it may be painful or expensive or something else. But my problem is they can't even apply and attempt to do that. And, of course, as you know, a couple of the plaintiffs in this case have all kinds of connections with Illinois, even teaching and doing some other things. It's ridiculous. But at the same time, what is it that Illinois can't say, okay, you can apply, but here are the conditions that your State has to own up to, whatever. And that's what bothers me from the Second Amendment standpoint. That's why I think the higher level of scrutiny, at least for letting an application, should be applied here. So I'd like to start with what Illinois actually does because I think it might alleviate some of your honors concerns. So there is a reason why the States changed between 2013 and 2015. And that's because when the surveys were sent out asking what the States' practices were, some States changed their answers. And so Illinois in 2015 had their lawyers review those surveys, verified that those changes did actually occur, and kept it up to date so that in 2015, or I suppose in 2016 when they compiled everything, the four States that were listed as substantially similar were the ones that did everything that Illinois needed them to do in order to verify and monitor its applicants. And Illinois, as shown in the TREMI affidavit, knows that many of the other States simply don't track or record the information that it needs. And so, as your honors said, certain States do that, and those are the States that we do allow applicants from those States to apply. But if the States don't track, for example, who... Well, for starters, do they even license concealed carry permits, or do they allow everyone to carry? So that's the first question. And then the second question is mental health. You're talking about the constitutional carry cases or whatever they call them? They don't have any rules. Everybody can carry a gun. I don't know which States those are, but I know they're handfuls. Yes, I believe there's 12 of them. That's in the Everytown amicus brief, goes through all of that. Well, this may be a problem for the applicant, because the applicant's going to have to put all of those together on his or her own. And I don't question that. If you have to find a survey or pay for it or have somebody do this, you say Illinois does this, that, and the other thing, and therefore it meets the standard. And Illinois, as you know, is pretty reluctant in the first place. Illinois has some pretty tough laws when it comes to carrying a gun than anywhere else. And they also have some pretty serious problems in Chicago and other places where they are not the type of people that are going to be applying for a concealed carry. Unfortunately, there's a lot of murders and things, and I can understand Illinois has a high standard of concern. I would just note that we are at summary judgment, and Illinois has put forward an affidavit stating that it is not possible for applicants to present the type of information that they need, based on their expertise, to satisfy the verification and the monitoring. And plaintiffs have not come back with any contrary evidence. They have not, for example, attached affidavits showing, this is how I can get these records. They don't have any expert testimony saying, actually, we believe Jessica Tramey is wrong. They have not come forward with any of that. And so at the very least, they should do that. Let me ask you just a background question real quick. Sure. So suppose I'm a Michigan resident and I hold a license within the state of Michigan to possess a firearm in my home. Yes. When I come to Illinois, I can drive the gun with me, cross the state line, and if I'm going to be working downtown for a week, can I keep that gun in my apartment for that week? Yes, you can. And the reason is because I'm a licensed holder. Yes. Okay. Yes. Okay. You can also keep it at your fixed place of business, if that business allows it. You can keep it at your friend's or family's home if you're traveling to see family. I mean, really the only limitation here is walking around in the streets of Illinois. So how relevant is it or not? Same question I asked the other side. Did I, as a non-resident, possess those rights? Is that the right way to focus on the question presented, or should we focus more narrowly just on the concealed carry curtailment or limitation? I think that is extremely relevant because if you look at the standard, it is whether the regulation severely burdens a core Second Amendment right. And other courts have looked at that as whether an individual is given ample opportunity for self-defense. And as Your Honor just described, there are very many ways that Illinois allows non-residents to exercise self-defense. And so even if this regulation – well, I'm sorry. It is very relevant that this regulation does not severely burden the right of self-defense in that capacity because that is the standard. And here I disagree with plaintiffs saying that it's that we trust non-residents in one capacity and we don't trust them in another. If you are in your own car, if you are at a friend's house, if you are at your fixed place of business and they allow firearms, that is different than walking around the streets of Chicago or the streets of any other town in Illinois from a public safety perspective. And that's what Illinois is concerned with. If you are going to walk around through the streets of our state, we would like to know who you are. I mean, that's a really basic first question. Some of these states don't upload the licensing information to these federal databases. So if someone were to apply, we can't even look and see if you are who you say you are. That's a very basic level of what we need to verify. We also need to know that you don't have any criminal prohibitors, you haven't committed any felonies, also that you don't have any mental health prohibitors. And there's simply no way for Illinois to know that, as is shown in Zach and David. I think you could work through the initial application verification challenges. I think you could require certifications, interviews, or what have you. What I'm not sure about is the monitoring. So even if you step the initial hurdle of the non-resident can apply, and you require verifications and what have certifications, all that, I don't know how you learn of that domestic battery assault and mental health commitment in the other state. Right. There simply is no way for Illinois to learn. And I think that is a very serious concern for Illinois. Illinois, contrary to what was said earlier, is not trying to keep people with guns out just for that purpose. Illinois takes very seriously its role in making sure it knows who is carrying guns. And that's why, for example, between 2013 and 2015, it did allow three new states to be deemed substantially similar, because they were. And if the state has the mechanisms to update and report the mental health information and the criminal prohibitors, then Illinois is happy to allow those applicants. There are non-resident concealed carry license holders, and that has been working out just fine. But Illinois will then get the updates that it needs should someone have a mental health crisis or should someone be arrested or convicted of a crime. And I think that is the crux of this case. The TREMI affidavit does state that it would be difficult for verification, but even assuming that there were evidence in the record controverting that, there certainly is nothing controverting the monitoring aspect. Well, basically what you're saying is that for all of these other things, as my colleague has asked, okay, what about if somebody is visiting, staying in a hotel, et cetera, et cetera? And the only problem is, well, you can't walk around with a concealed gun, even though you have a concealed carry from another state. That's true. If you stay at somebody's house, if you check into a hotel, if you're in your car, all kinds of other things. So it's kind of a narrow limitation. It is. It's a very modest burden, if anything. It is modest, and that's why it just seems that people who have a concealed carry, whatever, it would be kind of modest to allow them to apply, and then somebody can say, well, that state doesn't do this, that, or the other thing. It may be that those kind of people go back and call their state legislator and say, hey, this is pretty simple. Why don't you just do this to check, et cetera, or change the law? Apparently three states did that. That's true. And three states didn't do it or something. Whatever happened took them off the list, and you got three added. And I'm just saying that this is kind of arbitrary, and that if there were some specifics that when someone is applying, they were allowed to apply with a concealed carry, if that seems to be a preliminary, then tell them, well, you'll have to show that your state does this, that, and the other thing. And maybe they can, maybe they can't, but at least they can apply. Maybe they won't get the concealed carry because they didn't come back with that information. That's what concerns me about the Second Amendment. This has to be a higher set of scrutiny of just rejecting someone out of hand because the state says, well, we have stricter laws here in that state, or we don't like them, but you don't get to apply. No, that may mean that you can apply, but you don't get it unless something is cured. And that's just a whole issue in this case to me. I would submit, though, that the same result would occur. Even if Illinois said, well, you can apply, but if your state is not substantially similar, we're not granting you a license, then that would just be a very large waste of time, both for the applicant going around trying to get these certifications and for the state. So it's effectively the same system as what Your Honor is suggesting. It's just that Illinois has done the work ahead of time to say, we know that these other states are not going to have what we need. Well, they must do that update all the time then because they eliminated three and added three. Yes, they do continually send out surveys. And I would also note that this is not a case in which any of the plaintiffs are saying that their state has been miscategorized. And if that's the case, say you're from Colorado or say you're from Wisconsin, and you say, I don't think my state has been properly categorized by Illinois. Well, you could bring that type of claim. You could come and say, my Second Amendment rights have been violated because I am in a substantially similar state, and Illinois is not allowing me to apply for a license. But that's not their claim here. They don't say that any of their states have been miscategorized. They say that the Section 40B regulation is just unconstitutional because it has the substantially similar requirement. And they also are not, I would note, complaining about any of the underlying substantive requirements. So they don't say that Illinois standards are too difficult. They don't say that there's anything wrong even with a substantially similar test in the administrative regulation. They simply say that 40B is unconstitutional. But I agree. If Illinois has miscategorized someone, then I think that they should come to this court or another court and say that, and then Illinois can take a look at it again. But that's not the type of case that we have here. The type of case that we have here is just about whether Illinois can say, we need to verify and monitor this information and the means by which they're doing so. And I'd also note that intermediate scrutiny, I can get into intermediate scrutiny, or if Your Honor has a question. Well, something. Okay. That's the trouble with the level of scrutiny because we talk about heightened scrutiny and something below strict scrutiny, but higher than just not unreasonable, which we might look at the previous opinion. It's a matter of application. And if somebody comes to apply, okay, they could apply. I guess instead of saying, what is it, at the point where they go and apply, you say you can't apply because your state, as opposed to letting you apply and say, however, you don't get concealed carry because your state, apparently you monitor every state to see who's good and who isn't, then your state is missing this and that and the other thing. That may be a reform, and somebody could say, oh, well, we'll never overcome that, or say, well, this is the only thing missing, and I can clear that up, et cetera, et cetera, and maybe still qualify. That's all. That's all I'm looking at, at least. I'm not saying that you just out of hand just say it's unconstitutional on its face, even though that may be the case. What I'm saying is, is there a middle ground where this could be cured and at least allow the application? But I think in that situation, allowing the application, just knowing that then it would be denied, you know, you're asking these non-residents. It would be denied because of certain things that you're concerned about, but that person then would maybe be able to come up with a method of checking on mental health. As the other side brings up, well, somebody who has a license in Illinois just goes to another state and does something or gets something or gets mental health or does things, there's no record of that. There's no way you check on people that already have it, and that's probably one of the other problems. Basically, there are no other states other than four of them that qualify. So anybody that visits another state and does something that would be negative in Illinois, you don't know about it. So even a carrier in Illinois, you can't detect it anyway when they travel and do something bad somewhere else, something negative, I should say. Ms. Hunger, I'd like to ask you about driver's licenses. Before I do, I'd like to ask you about the plaintiffs who are themselves certified to provide CCL instruction in Illinois. It's a little hard to see a legitimate state basis for denying those folks Illinois CCL licenses of the kind they are qualified to train people to obtain. I think it's actually in step with the entirety of the Illinois system. As we've noted, if you are a permit holder in another state, then you are allowed to bring your firearm to a certified shooting range or firing range. Presumably someone who is a certified CCL instructor, that is where they would be performing their classes or teaching. So I do think that it is consistent. But they're not allowed to do what their students are allowed to do, which is carry guns on the streets of Chicago or Springfield. That's true. The same issue, though, with monitoring would plague those individuals as well. Illinois simply wouldn't have any information about whether that individual going out on the streets, which is different than where they would be certified teaching a class, has had any prohibitors come up. Let me ask you about driver's licenses. What I want to suggest is that now in the relatively early years of the 21st century in dealing with these new individual rights under the Second Amendment, I wonder if we aren't facing the kinds of issues that the country faced 100 years ago as motor vehicles were spreading all over the United States, states were developing new licensing systems, and then trying to work out reciprocity agreements among themselves. That took a few years. Actually, there was some interesting litigation in the Supreme Court where I noticed that the Attorney General of Maryland back in those years was one Edgar Allan Poe, presumably a descendant of the author. But I just want to suggest and get your reaction to the possibility that we are in early years of sorting out these frictions among different states, and that there also may be improvements in databases and communications and the sharing of information among states and the federal government that could wind up in the foreseeable future reducing the kinds of burdens that the plaintiffs are complaining about. I would agree with that. I would not be surprised if our list of substantially similar states does increase in the future simply because more states might have the technology to upload the licensing information or other information into these national databases. And if that were the case, then Illinois certainly would allow applicants from those states. I'd also note that this is a relatively new system in Illinois as well, and I think this is part of really trying to get it right in terms of making sure that only qualified people are carrying licenses in Illinois. But the state police certainly would welcome a larger number of states were they to join these national databases because there are a lot of states. I think there is a chart attached to the TREMI affidavit showing exactly what states checked yes or no to on the surveys, and for many of them it really is just that they do not upload the licensing information to the federal databases. So if that technology does come to those states or there is a change, that's all that would need to occur for the substantially similar category to extend to them. Is there any national organization of state officials who are responsible for these kinds of enforcement actions? I'm not sure. Whether it is for motor vehicles or highway departments and budget officers and so on? I don't know. But I do know that as this does progress, there likely will be more reciprocity. Can I ask you about the training requirements as well, Ms. Hunger?  Illinois requires, I believe, 16 hours, is that right? I believe so, yes. Do you know whether that includes training in what I will loosely call shoot-don't-shoot exercises of the kind that law enforcement officers have to go through? I don't think that that's detailed in the statute, and I haven't read anything on that. Okay. But it does require marksmanship tests with live ammunition. Yes, and there's a threshold, I believe, that you have to satisfy. Seventy percent hitting the target. But I noticed that Wisconsin seems to, the legislature seems to have prohibited requiring people to use live ammo to qualify. I'm just wondering, this seems like one of those areas where there's a lot of room for, let's say, homogenization with a little time. There is, and I know Wisconsin does also have a reciprocity system, so they, I believe, recognize 29 different states based upon the background check. So, you know, Illinois is certainly not an outlier here. I think the Everytown Brief goes through it in great detail. But there are 10 states plus the District of Columbia that don't have any reciprocity or currently don't license to non-residents at all. So this is not a situation where Illinois is somehow on the far extreme. They're kind of right in the middle of what is happening. And I think with a very flexible approach, such that as states' technology or their practices change, then there can be application from those different states. And in the meantime, the non-residents are able to travel through the state in their car. They're able to, you know, if they have two residences, one in Illinois, one in Wisconsin, they can have their firearm in their home in Illinois. They can have their firearm at their fixed place of business. This is really a very modest burden on the Second Amendment right. And Illinois has made a policy choice that is constitutional and among the many different policy choices that it could make. If I want to back up a little bit what we were talking about before, and that is about some organization or something that may be an advocate that would work to change a law or to add something in another state. As the others know, I had one term in the state senate, which is enough for me. A formative experience. But if someone could come to me as a state senator and said, look, here's a problem in Indiana. And it could be someone who's talking, which I think we're talking about here, is an individual right under the Constitution, a right to keep and bear arms. Yeah, it's a blanket, but it's also each person, and that's who the plaintiffs are. They're an individual who are concerned about their own right. They have concealed carry. If someone says, look, here's something we need to do in Indiana. Okay, if they have an organization or something that puts something together, then that's what a legislator does. And if there needs to be a change in law or regulation or something where you go to the people who deal with it, but you don't know that, at least I wouldn't, until you go and apply and say, here's what's missing. Really, it seems where we are. I do think that is possible under Illinois' system, though, because they can pull up the website where you apply and see, oh, my state isn't substantially similar. Illinois State Police has a very detailed FAQ section that goes through all of this. And I do think that an Indiana resident could print all of that out and take it to their local representative and explain the situation. They could also contact the Illinois State Police and ask, well, which of these four is my state failing? And I've spoken with the Illinois State Police about this, and they would share that information. The plaintiffs did get it here through FOIA, so it is available. And they could take it to their state legislature and say, you know, there's only really one thing here that's preventing us from carrying firearms in Illinois. That's certainly possible. All I'm saying is that this comes down to an application. Sure, you can do some research and say, this is what I want to do. But when you have something pending, an application that's pending, and you've got to fill in some blanks, that's when you go to your state legislature or you initiate some of these things yourself, or you find out something that is missing and maybe you can't cure it. Maybe you can. It just seems that the application process, you say, well, maybe that's too much trouble. And that shouldn't be too much trouble. That should just be a law. I call it the heightened scrutiny. Someone should at least be able to apply and not be rejected out of hand because of some other state for whatever reason. And Illinois may have various reasons for not liking one state or another. You find that out when you go and apply. People come from various places, not just Indiana and next door, but probably farther away. So that's really what it is. I look at this as an individual right as well, as opposed to whatever state law or state regulation. And things that can be cured, maybe not. It's the Hamilton-Singh, the driver's license, and other things evolve. And I think the same thing is going on here. Any final thoughts, Ms. Hunter? I believe we've covered most of it. I would just note that this court has reached most of, actually all of these issues in Culp One. Plaintiffs have not come forward with any new evidence. And we ask that this court affirm the grant of summary judgment. Thank you. Thank you. Mr. Spiegel, rebuttal? A few hopefully quick points, Your Honor. Thank you. First, I'd be very surprised if more states added to the substantially similar list since the state hasn't sent out a survey since 2015. Second of all, with regard to the level of scrutiny, in addition to agreeing with Your Honor's analysis in Culp One, I'd just like to point out that it is constitutionally unfair that plaintiffs should be treated the same in this case as the domestic violence misdemeanors and drug users and felons as the circuit has applied intermediate scrutiny to in past cases. As a third point, the state stood up here and said, you know, we're not opposed. People are coming into the state with firearms. We just want to know who we are, who they are. That's the point of this case. The plaintiffs want to tell them. The plaintiffs want to fill out an application and comply and say we've done all the training you require. Wisconsin maybe doesn't allow training with live ammunition for permitting, but if that person wants to come into Illinois to get a permit, they still have to comply with Illinois' training requirements. So those people are saying we want to be part of the system. It's the people really that don't want to be part of the system that, if you're historically reading about trouble, it's those people. The people that are causing the crime problem are not the plaintiffs who want to comply and be part of the system. I do at least want to point out that there were other claims. I only mentioned them first to point out that they exist, but second of all, that I don't believe, though the district court gave short shrift to them, equal protection under the 14th Amendment, if it involves a fundamental right, it requires strict scrutiny. While the state seems to be arguing how close or far away from the core of the Second Amendment right, no one is arguing that what is at stake here invokes the Second Amendment. There is no close or far away from the core requirement under the 14th Amendment. In addition, residency requirements, residency discrimination, also invokes strict scrutiny under the 14th Amendment's Equal Protection Clause. The Article 4, Privileges and Immunities, if the court considers that claim, the standard for that is pretty much the not-quite-strict scrutiny of EZEL. If McDonald had embraced that argument, that would have a lot more traction. Any final words? Your Honor, I think that, especially the extra time Your Honor has given, I think it's often said, I ask that this court reverse the district court that granted summary judgment for the defendants and denied summary judgment for the plaintiffs. I thank you on behalf of the plaintiffs for your time today. All right. Thanks to all counsel. The case is taken under advisement.